Thank you. Nice to be back. My name is David Ness. I'm with the Federal Defenders and I represent Mr. Michael Connelly. There have been three issues raised in this appeal. I think the one that's garnering the most attention is the third issue, and that's the jury instruction issue having to do with the solicitor's concession in the Ajaku case, if I'm saying that correctly. It was argued twice as this issue in this circuit this week. Initially, as the Court knows, the government conceded that there was plain error, but what they argued was is that the error likely didn't have a probability of affecting the outcome of the case. And I think the government conceded there was plain error or conceded there was error? In other words, plain error. Oh, that there was error conceded. I'm sorry. Okay. Sure. I kind of misspoke there. Obvious error, but not technically plain error. But not technically plain error. Yeah. Since that time, a panel of this Court came out with a decision in Masio that apparently determined that an error of this nature is not plain. Listening to the arguments this morning, I think it was in the Torres-Guardado case, for what it's worth, I think the panel was kind of skeptical of the Masio decision. I think as Judge Wardlaw from The Voice mentioned, she just couldn't quite understand how a panel could come up with the decision that it did. So I would argue that, in fact, the government's position was correct. That's supported, I think, not only by the Solicitor General's statement when it conceded the issue in Ajaku. I think it's also supported by the fact that it's my understanding that the jury instruction for Section 1001 has been changed to reflect the Solicitor General's position. So we start from the position that everybody agrees that the instruction was erroneous, but no objection below. There was no objection. So tell us why. I don't know whether the answer to the question is prejudice or whether or not the error was so egregious that your client couldn't possibly have gotten a fair trial. But whatever the standard is for plain error, tell us why this rises to that level. Well, the standard is a reasonable probability of a different outcome. Not for plain error, not for unobjected to. I believe for plain error that you need to show that it affects the substantial rights and that there is a reasonable probability that there would have been a different outcome. Right. So it's the substantial rights part of the test that I'm interested in you addressing. The question is whether or not your client should have known that it was illegal to lie to the FBI and the jury wasn't instructed that he had to know that. Why is that error such that in the absence of an objection we would reverse? You know, this was a strange case in a lot of ways. There was seven hours of testimony, ten hours until liberations. The jury acquitted my client on the underlying offense that was the subject of what he was convicted of lying about in the 1001 charge. The prosecutor argued during closing argument that even if he didn't tell the first agent about a joke that he may have made, that they could still convict him on that. So, you know, I would argue, one, it is reasonable to conclude that a person who may have made a joke or something of that nature but is being asked questions about whether or not he forced this woman to engage in sex, that he is reasonable to conclude that he wouldn't have known. So in your view, is the prejudice analysis for plain error the same prejudice analysis we would make had an objection been made? I mean, you seem to be arguing a prejudice analysis that would be identical to the one you'd make if you'd preserve the issue for appeal. Well, I mean, you still have to show that the error was plain, and then beyond that we have to show that it affected the fairness or the integrity of the proceedings. So yes. And that's, I guess, my question. Does it affect the fairness or integrity of the proceedings not to tell the jury that a 25-year veteran in law enforcement should have known that lying to the FBI was not appropriate? I think it does under the circumstances of this case. You know, I really do. You know, given the things that I just outlined, that, you know, particularly that he was acquitted of, you know, actually raping this woman, of forcing her into sex by telling her that she would go to jail if she didn't have sex with him. And so then you take that, and then you take when the court's been provided a copy of their unofficial, but I think they're correct, of the transcripts of his interviews with the two FBI agents. And there's one answer to one question that is inconsistent with his answers to everything else. And I think it's, A, reasonable to conclude that after two and a half hours of questioning he misheard the question, misstated his answer. I think also it's reasonable to conclude, on the other hand, too, that if he was asked about a joke in the context, and I'm talking now about the first interview, in the context of being questioned about forcing this woman into sex, that even despite his law enforcement experience as a tribal police officer, he may not have known or at least the jury should have been presented with the question of whether he knew that that sort of conduct was unlawful. Was it argued to the jury in those terms, that is, that he didn't know it was illegal to lie to the FBI? No, it wasn't, because the the... Because you didn't know you were entitled to the instruction? I didn't know I was entitled to the instruction, and the instruction at the time, the model instruction clearly said that the government did not have to prove that he knew that his conduct was unlawful. So had I been arguing that, I would have been arguing it against this Court's model instruction. Well, it's not really our model instruction. Well, that's correct. I know it's not necessarily approved by the Court, but... Yeah, the model instructions are right. This is a different topic, but the model instructions that come out are interesting because we don't quite write them. Right. And we occasionally disapprove them in the cases when they finally come up. But try telling the district court judge that. They don't go with that. So unless there's any other questions... Let's hear from the other side, and then you've got some time. Okay, thank you. Good morning, Your Honors. May it please the Court, Jennifer Levin Eichorn on behalf of the United States. And if you can keep your voice up, that would be great. Sure. Does this help a bit? Yes. Okay. Given the discussion focusing on plain error, that's where I will begin. And I'd like to begin by clarifying the Department's position with respect to the plain error analysis. It's the Department's view that the Court's decision in Masio is correct on several points. First, the decision, this Court's remand in our confession of error does not constitute plain error. Second, to Toyin, is this Court's last statement with respect to the standard for 1001. And, therefore, the instruction that was given here, while we might think it's wrong, does not rise to the level of plain error because this Court has not yet held that an instruction under 1001 must include knowledge the defendant knew was unlawful. So let me understand your position. Your position is that the instruction is erroneous, but it wasn't obviously erroneous. That's correct, Your Honor. Does that matter under a plain error analysis? That this Court can certainly still affirm that the other prongs of plain error are not met in terms of his substantial rights were not affected and the fairness and integrity. But what if they are met? What if the other prongs are met? What if substantial justice was not done and the integrity of the process was affected, but it wasn't plain at the time that this extra word should be in there? Doesn't that constitute plain error for purposes of our analysis? No. Plain, the standard of whether or not something is plain is different than whether the substantial rights are affected. That's right. And I'm saying, so we can have a case in which the wrong instruction was given. We've never actually addressed that instruction before. It changes the outcome of the trial in an unfair way, yet we leave it, we let it stand because it shouldn't have been obvious to everybody that the instruction was wrong. Is that your view? Yes. The requirement of plainness, which requires that it be obvious, that this Court make a clear pronouncement that this is a standard. But, again, that's not the facts that we have here. Here we have additional facts. The additional elements also are not met. His substantial rights are not affected. And when the Court has said substantial rights are not affected, there is no reasonable probability that the verdict would have been different. So the question is whether or not a reasonable jury, if asked, would have concluded that the defendant knew that lying to the FBI is a crime. Here we have an officer with, again, over 25 years' experience, multiple years working with the FBI. He clearly is aware of other rules that apply. He's aware of Miranda. He's aware of the consent form for buccal swabs. Having worked with the FBI, I think it's fair to assume that he's aware that lying to the FBI is a crime. So, therefore, you can't show his substantial rights were affected, and in turn you can't show the fairness and integrity because you can't show that the verdict is likely to have been different. Is there anything in this record other than the fact that this defendant was a 25-year law enforcement veteran? And the fact that he worked for five years with the FBI. At least five years with the FBI. I think it can also be inferred, given the... Well, let me ask the question first. Put aside what can be inferred. Just tell me what's in the record with respect to his either knowledge or relationship with the FBI. That he worked with a particular agent, Kimball, for four to five years, the immediate preceding, as a criminal investigator, as a tribal officer, and as a law enforcement officer. When Officer Kimball described his duties as an FBI agent, he explained that he investigates crimes on tribal territory. So I think it's fair to assume that given Mr. Connolly's position as a tribal officer or law enforcement in the tribal community, that he would be interacting not just with Officer Kimball but with other FBI agents. But I think at a minimum, his knowledge, his working hand-in-hand, side-by-side, with Officer Kimball, his familiarity with Miranda forms, his familiarity with the consent forms, saying, when he said during the interview, yeah, I know what these are, and so signs of consent. Do the Miranda forms or consent forms, and I must admit there's some ignorance on this topic, indicate that it's a crime to? No. No, Your Honor, I'm not saying that they're identical, but I'm saying it reflects his understanding of not only FBI procedures but the law that applies when you're working with the FBI. What cohorts have also done is look to a defendant's knowledge and experience in terms of saying whether or not they should know a false statement to the FBI. I'm sorry, a false statement is a crime. So in the Starnes case of the Third Circuit, while looking at a sufficiency of the evidence question, it looked at the defendant's knowledge as an asbestos contractor to know that lying on the forms for air quality was a crime. You're asking us to infer from his long experience in law enforcement and including some of that experience directly working with the FBI that he knew. Given what he did, the undisputed part of what he did, we can also infer that he's stupid. So what do we do with that when we're trying to figure out whether he knew or not? That his lack of judgment I don't think changes the fact that he should know that lying to the FBI is a crime, Your Honor. And again, the reference to being acquitted on the underlying offense, it's true he was acquitted on the 2242, but he was convicted on the 242. And the jury instruction specifically said that to find that he abused his power means he used a threat to force the victim to perform oral sex. He was convicted on the 242. Tell me slowly what the 242 is. You're a little too quick for me. Excuse me. The 242 is a violation under color of law. The specific jury instruction here said to show that he abused his power, he made the threat that forced the victim to perform oral sex. So while it might be inconsistent verdicts, counsel's reference to the fact that he was acquitted on the underlying charge isn't entirely accurate because he was convicted on the 242, which is essentially the same facts. Let me come back to the plain error and the definition of plain within the meaning of our plain error doctrine. Well, it wasn't plain in the sense of obvious at the time of trial. Correct. It has since become plain. So plain error only at the time of trial or plain error now, now that we know what the instruction ought to have been? Well, Your Honor, I wouldn't agree that it's plain now because it's plain when this Court specifically holds that a jury instruction for violation of 1001 must include knowledge of unlawfulness. And this Court has not done that. It has not. It did not say that in Titoyen. It specifically said it only needs to be deliberate and with knowledge of the falseness, but did not reach this third step. So this Court has not made that pronouncement. And unless and until it does, it's not yet plain. I'd also note that unless there's a case on point, we can never find an error plain. If somebody leaves out, a judge leaves out an element of a statute, and let's assume that the element is plainly in the statute, leaves out the element in the instructions, your position would be it's not plain error because no other judge made that mistake before, so we never ruled on it? No, Your Honor. But I'm saying in this case, when you're dealing with a term willfulness, which is a term which the Court has recognized has many meanings, that you can't take what this Court may have said willfulness means in other contexts to specifically apply to 1001 when this Court has a specific opinion on 1001, saying it does not require that level of knowledge. Yeah, that's different. I understand that position. That position is that our extant law had said that something wasn't required, and that even if we now all believe that it is, you can't blame the judge for giving the instruction given, mandated by our extant law. That's a different argument. I understand that one. Yes. And I'd also just point out that as we — I believe there's only a limited number of cases left where this issue can actually arise. I mean, this was a trial that happened a month before — I'm sorry, just three months before the change in the jury — in the model instructions, and one month before the Department determined to change. And clearly, adding the element of knowledge of unlawfulness is a higher standard for a defendant that I doubt any defendant would object when the United States asked for that higher standard. So there will be — there's a limited number of cases in which this issue will arise, and I'm — while I certainly don't know the full docket, I'm only aware of one more which is yet to come where this would be an issue. So it has a limited life left since the United States won't be pursuing this. Sounds like you're hoping for a memorandum of disposition. Okay. All right. Thank you. Thank you, Your Honor. I guess just a few points. As counsel stated, the issue here is whether or not the mistaken jury instruction resulted in a reasonable probability of — had the jury been instructed correctly, is there a reasonable probability of a different outcome? The reasonable probability standard, I think, is — it's a low standard. At least I'm borrowing from the Strickland standard that I'm more familiar with. It's less than a preponderance. It's really a fairly low standard. So we're not, you know, up here, I don't think, having to establish beyond a reasonable doubt that the jury would have determined this case differently or even by a preponderance. I think we're lower than that. Yeah. Now, here's my problem with your position. Much of the argument goes to the fact that he might not have said it because it's a statement kind of within — buried within a lot of other statements and so on. But that's not the question. The question is whether he knew that a false — not whether he made a false statement because the jury seems to have decided that he did make a false statement. What you're arguing is that, well, he didn't know it was illegal to make a false statement. That's a different proposition. Because the hard part, really, is whether he made a false statement because it was in all of this stuff and it's inconsistent with and so on. But the question of whether he knew that a false statement was illegal is a different question. And I guess that just leads to my second point and, again, what the prosecutor argued during closing argument where he said, even if this was only a joke, you can still find that he committed the crime of making a false statement. But wouldn't that be true? Because he denied having made — he denied having said a series of words to the victim. And then later on he said, well, I may have said them by — I had intended them as a joke. Whether or not it was a joke might bear on the 242 charge, but I don't see how it bears on the false statement charge. Wouldn't it bear on materiality? You know, there was a suggestion made that maybe he was stupid or — but, you know, when you're looking at the false statement, the elements of false statement requires that your false statement be actually material. And so, you know, those are things that lawyers and judges can argue about all day long. And so you would — if — had the jury been instructed that he had to know that his conduct was unlawful, then I think you start getting into this question of whether or not he — what he knew about the 1001 statute, what he knew about materiality, those sorts of things. And I don't think that — that counsel's references to the fact that he was used to consent forms and things of that nature establishes anything about his knowledge of making a false statement or the requirements to meet that offense. Kennedy. Have you read our recent somewhat opaque procurium in the Bonds case about materiality? No, I have not, Judge. Well, we talked about materiality in the instruction of justice statute in terms of materiality, what it means, and so on. So I'm chewing on your argument. I hope — I hope it tastes good. We'll see. Okay. And also, the cases that they cover — Your time's up, so if you want to sum up — Oh, am I out? No, if you've got something you want to say and sum up, I don't want to cut you off. I — I was just going to say that the cases cited by the government, you know, in showing that by profession the person should have known that the statement was false involved completely different situations. It was much more clear an asbestos contractor lying about, you know, air quality standards, a prison guard lying about seeing a prisoner get beaten. That's far different than I think what happened here. And this argument, now I'm afraid I'm going to take you over further, with respect to the instruction, does not go to the 242 conviction? No, it does not. Would the sentence change? Do we know? Yes, it would. So how was the sentence arranged? Was it concurrent sentences, consecutive? It was — it was concurrent sentences, but the 242 charges a misdemeanor with a statutory maximum of one year. False statement charge is a felony, and you've got two years on that. So there's a big consequence, okay. Yes, there is. Thank you. Thank you. Thank both sides for nice arguments. United States v. Connolly submitted.
judges: Baylson, Fletcher, Hurwitz